UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT E. RENDON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:14-CV-4225-B |
| | § | |
| WALGREENS, | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendant Walgreens' Motion to Dismiss With Prejudice and Motion for

Attorneys' Fees and Costs (Doc. 12), filed on September 10, 2015. For the reasons that follow, the

Court **GRANTS** the Motion.

I.

BACKGROUND

This case arises out of injuries that Plaintiff Robert Rendon suffered in 2012, allegedly as the

result of ingesting medicine dispensed by a pharmacist working for Defendant Walgreens. Doc. 1,

Ex. 2, Pl.'s Pet. ¶¶ 10–13. Rendon asserts that he presented the pharmacist with a prescription from

his doctor, but the pharmacist filled the prescription with the wrong medicine. *Id.* ¶¶ 10–11. As a

result of ingesting this medicine, Rendon suffered a fall, causing him "numerous physical injuries to

his entire body, from which he continues to suffer mental and emotional distress." *Id.* ¶ 13. Rendon

originally filed this action in the 101st Judicial District Court of Dallas County, Texas, on October

16, 2014, asserting claims for violations of the Texas Deceptive Trade Practices Act, strict tort

liability, negligence, and negligent misrepresentation. *Id.* ¶¶ 15–24. Walgreens removed the case to

this Court on December 1, 2014. Doc. 1, Notice of Removal. On September 10, 2015, Walgreens filed the instant Motion, to which Rendon responded on October 9, 2015. Doc. 16, Pl.'s Resp. Walgreens replied on October 14, 2015, Doc. 17, and on October 22, 2015 the Court held a hearing on the Motion at which counsel for both parties were present. The Court is now ready to issue its decision.

## II.

## LEGAL STANDARD

In a case that has been removed from state court, the proper pleading standard to apply when deciding a motion to dismiss is that of the state from whose court the case has been removed. *Craig Penfold Props., Inc. v. Travelers Cas. Ins. Co.*, No. 14-CV-0326, 2015 WL 356885, at *2 (N.D. Tex. Jan. 28, 2015); *see also De La Hoya v. Coldwell Banker Mex., Inc.*, 125 F. App'x 533, 537 (5th Cir. 2005) (applying the Texas pleading standard on a motion to dismiss claims in a case removed from Texas state court); *Sutton v. Airsep Corp.*, No. 11-CV-2669, 2012 WL 253959, at *3 (N.D. Tex. Jan. 27, 2012) (applying state pleading standard on motion to remand because "state court plaintiffs should not be required to anticipate removal to federal court"). In a case removed from a Texas state court, the Court applies the Texas pleading standard. Traditionally, Texas courts have applied a pleading standard that is more liberal than the federal pleading standard, upholding a petition as long as it provides "fair notice of the claim involved." Tex. R. Civ. P. 45(b). In March 2013, however, the Texas Supreme Court adopted Rule 91a of the Texas Rules of Civil Procedure, which provides in pertinent part:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis
> in law or fact. A cause of action has no basis in the law if the allegations, taken as
> true, together with inferences reasonably drawn from them, do not entitle the

claimant to the relief sought. A cause of action has no basis in fact if no reasonable
person could believe the facts pleaded.

Tex. R. Civ. P. 91a. Though not identical to the Rule 12(b)(6) standard, the Texas Courts of
Appeals have interpreted Rule 91a as essentially calling for a Rule 12(b)(6)-type analysis and have
relied on the Rule 12(b)(6) case law in applying Rule 91a. *See Wooley v. Schaffer*, 447 S.W.3d 71, 76
(Tex. App.—Houston [14th Dist.] 2014, pet. filed); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752,
754 (Tex. App.—Beaumont 2014, pet. denied). Accordingly, this Court will do the same.

Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim
upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion
to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable
to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting
*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). The Court
will "not look beyond the face of the pleadings to determine whether relief should be granted based
on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S.
1229 (2000). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to
relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare
recitals of the elements of a cause of action, supported by mere conclusory statements, do not
suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the reasonable inference that the defendant is
liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability
requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*
When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but

it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

## III.

## ANALYSIS

In its Motion, Walgreens presents a two-step formula for dismissing Rendon's claims: first, that the conduct forming the basis for Rendon's claims is a health care liability claim ("HCLC") under the Texas Medical Liability Act (TMLA), Tex. Civ. Prac. & Rem. Code § 74.001, *et seq.*, and therefore Rendon can only sue Walgreens for professional negligence and gross negligence; and second, that Rendon's negligence causes of action must be dismissed for failing to comply with the TMLA's requirement to provide an expert report supporting the viability of his claims. Doc. 12, Def.'s Mot. to Dismiss 9–17. Rendon argues that, because he filed his Original Petition prior to the Texas Supreme Court's decision finding that the TMLA applies to claims against pharmacies, the Court should not apply that decision retroactively. Doc. 16, Pl.'s Resp. 2–3, 5. Alternatively, Rendon requests a 120-day extension to file an expert report, should the Court find that one is required in this case. *Id.* at 4–5.

A.   *Rendon's Non-Negligence Claims*

     1.   The Conduct Forming the Basis for Rendon's Claims is an HCLC

The Court's first task is to determine whether the TMLA limits Rendon's claims. The Texas Supreme Court has stated that "if the gravamen or essence of a cause of action is a health care liability claim, then allowing the claim to be split or spliced into a multitude of other causes of action with differing standards of care, damages, and procedures would contravene the Legislature's explicit requirements." *Yamada v. Friend*, 335 S.W.3d 192, 197 (Tex. 2010). Indeed, that court has gone

even further, finding that

> [C]laims premised on facts that could support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care are HCLCs, regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards.

*Loaisiga v. Cerda*, 379 S.W.3d 248, 255–56 (Tex. 2012). If it were otherwise, "then the TMLA and its procedures and limitations w[ould] effectively be negated." *Yamada*, 335 S.W.3d at 197. In deciding whether a plaintiff's claim is in fact an HCLC, a court is to "examine the underlying nature of the claim, and not simply the plaintiff's pleadings." *Groomes v. USH of Timberlawn, Inc.*, 170 S.W.3d 802, 805 (Tex. App.—Dallas 2005, no pet.); *see also Yamada*, 335 S.W.3d at 196 ("Whether a claim is a health care liability claim depends on the underlying nature of the claim being made."). Therefore, if the facts supporting Rendon's claim qualify as an HCLC, then he is limited to asserting professional negligence and gross negligence claims against Walgreens.

The TMLA defines an HCLC as

> a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

Tex. Civ. Prac. & Rem. Code § 74.001(a)(13). The elements of such a claim are (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant. *Bioderm Skin Care, LLC v. Sok*, 426 S.W.3d 753, 758 (Tex. 2014).

The term "health care provider" includes pharmacists. Tex. Civ. Prac. & Rem. Code § 74.001(12)(A)(iv). Rendon, however, has sued a pharmacy. That distinction is immaterial, though, because claims against both pharmacists and pharmacies are subject to the TMLA "with respect to 'those activities limited to the dispensing of prescription medicines which result in health care liability claims.'" *Randol Mill Pharmacy v. Miller*, 465 S.W.3d 612, 619 (Tex. 2015) (quoting Tex. Civ. Prac. & Rem. Code § 74.001(22)). The only action Walgreens is alleged to have taken—through its employee, the pharmacist—is that it gave Rendon the wrong medicine. Doc. 1, Ex. 2, Pl.'s Pet. ¶¶ 10–11. Therefore, because Rendon's claims are solely premised on Walgreens' "dispensing of prescription medicines," Walgreens is a "health care provider" for TMLA purposes in this case.

Regarding the second element, the TMLA defines "health care" broadly as "any act or treatment performed or furnished, or that should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Tex. Civ. Prac. & Rem. Code § 74.001(a)(10). Dispensing prescription medication falls within this category, and the allegedly improper dispensation of prescription medicine qualifies as a "departure from accepted standards of . . . health care." *Randol Mill*, 465 S.W.3d at 622–23.

Last, Rendon has alleged that Walgreens' error in filling his prescription proximately caused his injuries. Doc. 1, Ex. 2, Pl.'s Pet. ¶ 13. The basis for Rendon's claims thus falls within the definition of an HCLC, meaning that, under *Randol Mill*, the TMLA limits him to claims for professional and gross negligence.[1] Rendon contests the applicability of *Randol Mill*, however, urging

---

[1] During the hearing, Rendon, relying on the Act's definition of "pharmacist," raised the argument that the TMLA permits other common law claims against pharmacies. The TMLA defines a

the Court not to apply it retroactively. It is to this issue that the Court now turns.

      2.    <u>*Randol Mill* Applies Retroactively</u>

On April 24, 2015,[2] the Texas Supreme Court clarified that the term "health care provider"

in the TMLA includes pharmacies (such as Walgreens) engaged in the activity of dispensing

medication. *Randol Mill*, 465 S.W.3d at 619. But that court did not discuss whether its decision

would apply retroactively. On this basis, Rendon suggests that the Court ought not apply it in his

case. Doc. 16, Pl.'s Resp. 2–3, 5. For support, Rendon relies upon *Carrollton-Farmers Branch*

*Independent School District v. Edgewood Independent School District*, 826 S.W.2d 489 (Tex. 1992). In

that case, the Texas Supreme Court adopted the test for determining retroactivity set out in *Chevron*

*Oil Co. v. Huson*, 404 U.S. 97 (1971). *Edgewood*, 826 S.W.2d at 518–19. Rendon contends that the

*Randol Mill* decision does not pass muster under this test, and is therefore solely prospective in its

effect. Doc. 16, Pl.'s Resp. 5. Walgreens disputes this, arguing that a decision of the Texas Supreme

Court is retroactively applicable unless that court affirmatively indicates that it is not. Alternatively,

Walgreens asserts that *Randol Mill* merely affirmed a line of decisions from the Texas Courts of

Appeals, and therefore it applies retroactively even under the *Chevron Oil Co.* test. Doc. 17, Def.'s

---

pharmacist as

      one licensed under Chapter 551, Occupations Code, who, for the purposes of this chapter,
      performs those activities limited to the dispensing of prescription medicines which result in
      health care liability claims and does not include any other cause of action that may exist at
      common law against them, including but not limited to causes of action for the sale of
      mishandled or defective products.

Tex. Civ. Prac. & Rem. Code § 74.001(22). The Court agrees that this definition limits the TMLA's
application to causes of action against pharmacies to those claims based on the dispensation of
prescription medicine. But that is exactly the kind of claim that Rendon has brought, so this limitation
does him no good. He has not alleged, for example, that Walgreens provided him with a "mishandled or
defective product[]," only that they sold him the *wrong* product.

[2] The court denied rehearing on September 11, 2015.

Reply 6–10.

Both the Texas Supreme Court and the Fifth Circuit have recognized that "[a] decision of the [Texas] Supreme Court operates retroactively unless [that] [c]ourt exercises its discretion to modify that application." *Bowen v. Aetna Cas. and Sur. Co.*, 837 S.W.2d 99, 100 (Tex. 1992);[3] *Skipper v. United States*, 1 F.3d 349, 353 (5th Cir. 1993). It is worth noting that both *Bowen* and *Skipper* post-date *Edgewood*, indicating that it did not change the general rule. Moreover, *Edgewood* is not inconsistent with that rule; rather, the better reading is that *Edgewood* merely articulates how the Texas Supreme Court determines whether to modify the retroactive application of a decision. That determination is entirely separate from the question of whether a decision applies retroactively absent some affirmative indication to the contrary.[4] Therefore, the Court follows the general rule and concludes that, without an affirmative statement that *Randol Mill* does *not* apply retroactively, the decision applies retroactively to Rendon's case.

Even if the Court were to apply the *Chevron Oil Co.* test, it would not change this outcome. The first component of that test is that "the decision . . . must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Huson*, 404 U.S. at 106. *Randol Mill* did not establish such a novel principle. First, it did not overrule a clear past precedent because the issue was one of first impression. *Randol Mill*, 465 S.W.3d at 617. Second, the resolution of the

---

[3] *Bowen* cites *Edgewood* as authority for this rule.

[4] There are, in effect, two questions that a court must answer in determining the retroactivity of a decision. The first is, "How do we decide whether to apply this decision retroactively?" After that decision is made, the second question is, "How do we indicate what we decided?" *Edgewood* answers the first question, while *Bowen* and *Skipper* answer the second.

issue—whether pharmacies qualify as "health care providers"—was clearly foreshadowed. Walgreens points out several cases from the Texas Courts of Appeals that apply the TMLA to claims against pharmacies for the mis-dispensation of medication. Doc. 17, Def.'s Reply 6–9 (citing *Gingrich v. Scarborough*, No. 09-09-0211, 2011 WL 1711067 (Tex. App.—Beaumont Apr. 29, 2010, no pet.) (mem. op.); *HEB Grocery Co., L.L.P. v. Farenik*, 243 S.W.3d 171 (Tex. App.—San Antonio 2007, no pet.); *Walgreen Co. v. Hieger*, 243 S.W.3d 183 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *Ruiz v. Walgreen Co.*, 79 S.W.3d 235 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). *Randol Mill* itself acknowledges this unanimity of opinion. 465 S.W.3d at 617.

Against this tide of adverse precedent, Rendon seeks safe harbor in the opinions of the *Randol Mill* trial and appeals courts. Doc. 16, Pl.'s Resp. 3. As Walgreens noted during the hearing, though, the Court of Appeals decision in that case turned on whether the pharmacy's activity qualified as "dispensing prescription medication." *Randol Mill Pharmacy v. Miller*, 413 S.W.3d 844, 848–49 (Tex. App.—Fort Worth 2013), *rev'd*, 465 S.W.3d 612. The Court of Appeals did *not* find that pharmacies per se were not "health care providers" under the TMLA—only that the compounding of an antioxidant supplement and the bulk sale thereof to a doctor (rather than the ultimate user) did not constitute "dispensing prescription medication." *Id.* Thus the single case that Rendon cites as authority for his position supports it only weakly, if at all. In light of the ample precedent in accord with *Randol Mill*, and the feeble showing of authority to the contrary, the Court believes that the Texas Supreme Court's decision was clearly foreshadowed. The decision should therefore apply retroactively even under the *Chevron Oil Co.* test.

B.    *Rendon's Negligence Claims*

Having decided that the TMLA restricts Rendon's available causes of action to professional

and gross negligence, the Court must next decide whether even those claims can survive Walgreens'
Motion. The TMLA unambiguously requires a plaintiff who brings an HCLC to provide an expert
report supporting the viability of his claim within 120 days of the filing of the defendant's answer.
Tex. Civ. Prac. & Rem. Code § 74.351(a); *see also Loaisiga*, 379 S.W.3d at 252. This requirement
extends to HCLCs against pharmacies. *Randol Mill*, 465 S.W.3d at 617–23. Walgreens argues that
Rendon has failed to comply with this requirement, and his claim should therefore be dismissed.[5]
Doc. 12, Def.'s Mot. to Dismiss 16–17. Rendon attempts to rebut on two grounds: first, that he is
not required to comply with the expert report requirement; and second, that he has complied with
the requirement.[6]

Rendon's first argument relies on his position that *Randol Mill* should not apply retroactively.
Doc. 16, Pl.'s Resp. 5. The Court has already disposed of this contention, and it is satisfied that the
Texas Courts of Appeals decisions applying the TMLA to claims like Rendon's sufficed to provide
notice that he was obligated to obtain an expert report. Therefore, Rendon was required to comply
with the expert report requirement in this case.

At the hearing, Rendon asserted—for the first time—that he served an expert report on
Walgreens. This "report" is a note from his doctor, provided to Walgreens as part of a bulk
production of Rendon's medical records, indicating that he had suffered a fall as a result of syncope
and that the syncope was caused by Rendon's ingestion of the medication that Walgreens gave him.

---

[5] Walgreens filed its answer to Rendon's Original Petition on November 14, 2014—nearly 350
days ago. Doc. 1, Ex. 5, Def.'s Answer.

[6] Rendon also asserts that the expert report requirement somehow impedes his access to the
courts. The Court finds it sufficient to dispose of that argument that Rendon came forward with no
evidence of how that requirement would operate to deprive him of access to the courts in this case.

The note has not been provided in evidence, and even if it had been, it did not appear to satisfy the TMLA's requirements for an expert report. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a) (requiring, among other things, that the report contain "a curriculum vitae of each expert listed in the report"). The Court's conclusion is bolstered by the fact that Rendon did not raise this argument in his response to Walgreens' Motion, which clearly asserted that he had not provided an expert report, implying that he himself did not believe that the note satisfied his obligation. The Court thus finds that Rendon has failed to comply with the TMLA's expert report requirement.

Rendon has requested 120 days to obtain the necessary expert report, should the Court find that one is required. He has cited no authority for such an extension, however, and the Court has not found any, either. The TMLA permits the parties to extend the deadline for serving the report by written agreement, but there has been no such agreement in this case. *See id.* The Act also permits a court to grant a 30-day extension when the plaintiff misses the deadline because "elements of the report are found deficient." *Id.* § 74.351(c). The Court is not persuaded that this exception applies in this case because it believes that Rendon's "report" is not merely deficient, but not even truly an expert report. The Act does not appear to contemplate the situation presented here, where a plaintiff who has missed the expert report deadline retrospectively designates a document he produced as an "expert report" and seeks an extension based on its deficiency. An interpretation that permits such behavior would be at odds with the purpose of the TMLA, which is to reduce "excessive litigation" by imposing procedural roadblocks to serve as "corrective measures that will help bring more balance to the Texas civil justice system." Tex. B. Analysis, H.B. 4, 78th Leg., Reg. Sess. (Tex. 2003). Even assuming *arguendo* that the exception applies, the 30-day extension is discretionary, and the Court does not believe this case warrants it. *See id.* ("[T]he court *may* grant one 30-day extension to the

claimant in order to cure the deficiency." (emphasis added)). No other exceptions exist, and the Court is not permitted to engraft one onto the statute. *Offenbach v. Stockton*, 285 S.W.3d 517, 521–22 (Tex. App.—Dallas 2009), *aff'd*, 336 S.W.3d 610 (Tex. 2011). Consequently, Rendon is not entitled to an extension, and the Court will not grant him one.

The effect of Rendon's failure is to end his case. The TMLA does not simply permit dismissal as a result of non-compliance with the expert report requirement—it *mandates* dismissal. Tex. Civ. Prac. & Rem. Code § 74.351(b) ("If . . . an expert report has not been served within the period specified by Subsection (a), the court . . . *shall* . . . enter an order that . . . dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim." (emphasis added)). The Court therefore has no discretion in the matter, and must dismiss Rendon's claims for professional and gross negligence against Walgreens. As well, the statute demands the imposition of attorneys' fees and costs on the plaintiff upon motion by the defendant. *Id.* § 74.351(b)(1). Walgreens has moved for attorney's fees and costs in addition to dismissal, and so the Court likewise must grant that request. There is a discrepancy regarding the amount to which Walgreens is entitled, however. In its Motion, Walgreens requests $11,439.80 in attorney's fees and $406.68 in costs. Doc. 12, Def.'s Mot. to Dismiss 17. The billing statements attached to Walgreens' Motion, on the other hand, reveal only $11,287.50 in attorney's fees.[7] Doc. 13-1, Ex. C-1, Billing Statements 9–25. As a result, the Court cannot award attorney's fees at this time, but it invites Walgreens to supplement its brief to clarify the discrepancy.

---

[7] The costs reflected in the billing statements accord with the requested amount ($406.68).

## IV.

## CONCLUSION

Based on the forgoing, the Court **GRANTS** Walgreens' Motion to Dismiss With Prejudice and **GRANTS IN PART and DENIES IN PART** the Motion for Attorneys' Fees and Costs. The Court **ORDERS** that all of Rendon's claims be dismissed **with prejudice**, and that he pay Walgreens $406.68 to compensate it for reasonable costs.


SO ORDERED.

SIGNED: October 24, 2015.


JANE J. BOYLE
UNITED STATES DISTRICT JUDGE